Judge Grant and I would like to extend a warm welcome to our colleague here, Judge Robert Hinkle, who sits on the Northern District of Florida, and we're pleased to have him sitting with us for two days this week. We are hearing four cases today. Our first case is Navy Seal 1-2 et al. v. Secretary of the United States Department of Defense, Secretary of the Department of Homeland Security, 22-10645. Ms. Clark, you have reserved three minutes for rebuttal, so whenever you would like to proceed. May I introduce the Court, Sarah Clark for the United States. There are two plaintiffs here. Navy Commander and Lieutenant Colonel 2 are senior active-duty military officers who held or were slated to hold command roles in which they would be responsible for hundreds of sailors and Marines. The military determined that these particular plaintiffs needed to be vaccinated against COVID-19 in order to carry out their weighty responsibilities safely and effectively. The District Court rejected that judgment and replaced it with its own and directed the military to tolerate unacceptable risks. The record establishes here that Lieutenant Colonel 2 and Navy Commander specifically have the type of responsibilities and duties that necessitate COVID-19 vaccination. So Lieutenant Colonel 2, for example, her responsibilities are discussed both in her administrative appeal denial and in declarations, for example, from Colonel Thompson and General Smith and Lieutenant General Journey. Let me ask you one question right out of the gate. You have filed a notice that you've indicated that this case may be mooted. It's my understanding it has not yet been mooted, but if the language in the House version of the Defense Authorization Act passes, you anticipate that you will be alerting this court that this is moot, correct? So we certainly will alert the court of any developments. It seems likely the case would be moot, but obviously we'll have to just address whatever developments may occur. I think still the most recent development is that the House passed that version last Thursday. And it's my understanding the Senate hasn't voted yet. Is that correct? That's also my understanding. Okay. And so with that out of the way, we can proceed to address your issues. So Lieutenant Colonel 2, I'll start with her. So she was selected and was slated to command a combat logistics battalion. That battalion would be a part of a Marine Expeditionary Unit that would be based on Navy ships and would be forward deployed, meaning out in the world, and would be on call for rapid crisis response. So she would be deploying and she would have the potential to be the first on the scene really in times of crisis. And given her command responsibilities, the Marine Corps concluded that vaccination against COVID-19 was for her the least restrictive means of furthering the military's compelling interest in military readiness and relatedly in the health and safety of its troops. And let me also ask you one question sort of out of the gate. You are not questioning the sincerity of the religious beliefs held by the plaintiffs, correct? Correct, Your Honor. We're not challenging that. And you're not challenging that the vaccine mandate substantially burdens their practice of their religious beliefs, correct? Correct. We're also not challenging that. So we're just dealing today with the least restrictive means? Yes. Yes, Your Honor. And so Colonel Thompson's declaration, for example, for Lieutenant Colonel 2, as well as the Journey and Smith declarations, speak to her circumstances as we've laid out in our brief. And we have for Captain Brandon, for example, as well as Admiral Gilday and Vice Admiral Dwyer discussion of Navy commander specific responsibilities and why he needs to be vaccinated. So he, at the time of the P.I., was in command of a guided missile destroyer that had a crew of over 300 and that was in training to prepare to deploy and similarly is on call for potential rapid response. Let me ask you a question. The record indicates that medical exemptions have been granted, some perhaps mostly temporary, but some prominent, such that those people in the military are not required to take the COVID vaccine, at least for a short period, perhaps a long period of time. And it's my understanding that there are far, far fewer, really approaching zero religious exemptions that have been granted. And I look at your reply brief and you say, put simply, medical exceptions promote the health of the force, whereas religious exceptions undermine it. So when is the military, under what circumstances is the military willing to grant a religious exemption or is it really just theater? It's certainly not theater, Your Honor. The military has to consider the particular service members' circumstances and their responsibilities. So the point about medical exemptions and the reason why medical exemptions are not comparable to religious exemptions is in part because of the interest that they serve. So as you note, most medical exemptions are temporary. A small number that are permanent are typically for service members who, for example, would have an extreme allergic reaction or similar to the vaccine. So obviously requiring them to get vaccinated is not going to promote the health of the force. And I think the other thing to keep in mind about medical exemptions is service members with medical exemptions are not continuing on unabated with their duties. They have restrictions placed on them that can, in some cases, be occasioned by the medical condition causing the exemption and also by military policy. So it's not as if service members with medical exemptions are sort of freely conducting duties as they would without. It's a part of the military's consideration as to their assignments and duties and also as to whether they can continue on in service because if a service member can't deploy for an extended period of time, then the military has to reexamine whether they can stay in the service because deployability obviously is critical for both the Navy and the Marine Corps. So under what circumstances would the Navy be willing to grant a religious exemption? So I can't opine on specific circumstances. I mean, again, they would just have to weigh the risks of what that particular service member did. I know there have been some religious exemptions granted that sort of overlapped with administrative kind of circumstances. For example, where the service member is going to be separating from the military at some point in the future, I think there you have a situation where the military's sort of forward-looking interest in that person being ready to deploy and whatever their particular duties might require of them, the balance might be a little different. Obviously, what we have here are the circumstances of Navy Commander and Lieutenant Colonel too. You said you can't opine, but really we can't even look at the record to determine because as you have pointed out, for the very, very, very few religious exemptions that have been granted, it's when people are getting ready to separate from the service anyway. Under what circumstances, because there's really nothing that I can say in the record, would a religious exemption ever be granted? Well, so I don't think the record, particularly not the record at the time of the district court's decision when many of these requests were still in the midst of being adjudicated, I don't think it reflects a lot of detail about the circumstances of the service members who were granted exemptions. But again, I don't think that's certainly not dispositive here because the question is whether these particular plaintiffs need to be vaccinated. And that's what the record clearly reflects. I think, to your Honor's question about other service members, those issues I think would be more properly taken up in the sort of class action and class-wide PI litigation that's going on in other cases and that's not a part of this particular PI appeal here. I did want to ask you one question about Lieutenant Colonel too. At the time of the preliminary injunction, there were countries that would not allow her to come in because she's not vaccinated. Kuwait and Israel were the two, I think, that were mentioned. Is that still true? She still couldn't take her vessel into those countries? So I'm not aware of any countries that today have a sort of bar on unvaccinated individuals. So while that was true at the time of the PI, I don't think it's true right now. That said, obviously the military has to be forward-looking in its assessment of potential risks, so I don't think we can discount the risk that if circumstances were to change that Lieutenant Colonel too would have a problem either because a country had a vaccination requirement or even if it had a sort of, you know, you have to quarantine for some period of time when you arrive, that would obviously be antithetical to her ability to perform her sort of rapid crisis response duties and lead her battalion if she were to need to go. So is your response to Judge Hinkle suggesting that the military will not take into account that there are changing circumstances of this pandemic?  Again, they certainly will and do take that into account, but that what I'm saying is that they won't focus exclusively and put blinders on and only look at the current moment because what we know from our experience with the pandemic is that circumstances can change. So it's not that they won't take it into account, but past experience will continue, I think, to be relevant to their assessment. Of course, here we're talking about whether the district court abused its discretion back in February when there were these country requirements, and those will enhance the military's interest and need for Lieutenant Colonel Too's vaccination. The record reflects that Navy Commander Too has defied other COVID protocols. Do you know if he's been separately subjected to discipline for those issues? I don't believe he's been subjected to discipline for those instances. You're referring to when he caught COVID and then the sort of issue about his travel. Again, those don't affect whether or not he is entitled to an exemption. They came up in the district court primarily as sort of equitable consideration, essentially as to one of many reasons why the Navy did not believe he should continue on in command of his vessel. Let me ask you a question going to the irreparable harm prong. If someone has applied for a religious exemption and it is denied and they do not take the COVID vaccine, what sort of discharge, assuming the only thing that would warrant the discharge is the refusal to take the COVID-19 vaccine, are they going to go through a general discharge or a dishonorable discharge? Not dishonorable, Your Honor. So what would happen if the service member continues to decline the vaccine after sort of being denied an exemption is they would be processed for separation. And what that means is, I see my time is up. If you would, please. So they would have separation proceedings initiated against them, at which point they could again continue to challenge. If at the end of their separation, the least favorable characterization of their discharge would be general under honorable conditions. So basically, the best you can get is honorable. And many service members who have been discharged for declining the vaccine have have received honorable discharges. But the sort of worst case scenario would be general under honorable conditions. Thank you. Mr. Staver. Thank you. May it please the court. Matt Staver on behalf of the appellant of the. At least I respectfully request this court affirm the order below for at least two reasons. First, RFRA does apply to the military and second, the no accommodation policy clearly violates RFRA. With respect to this situation in March of 2020, from that time until the mandate of August 24, 2021, the plaintiffs have been able to perform all of their duties, all of their deployments without any interruption whatsoever using all of the existing COVID protocol. In this case, there is no issue with regards to their sincere religious beliefs or that the vaccine mandate violates their beliefs. The real issue here, however, is this sham policy that is frankly nothing but theater. Let me let me back you up for just a minute. They performed all their duties. They had to. At one point, they didn't have a Navy diver. At one point, they operated with a 25 percent reduction in the crew. They had to helicopter folks on and off the ship. They weren't operating the way they ordinarily operate. That's true, isn't it? That is not accurate according to this record. This record has indicated under oath from the Navy commander that not one deployment, not one mission, not one day. They were out at sea for 300 days between March 20 and the time of the vaccine mandate without any interruption whatsoever. That's his conclusion. But the fact is he didn't operate the way he would have operated had there not been COVID. Isn't that correct? That is absolutely not correct, Your Honor. So so why did they have a reduced crew? They didn't have a reduced crew like that. In fact, he indicated that they've always been able to operate in full operation with a crew of about 300 individuals. That is unrebutted testimony below. There's never been any information in this record that they've had reduced crew or they weren't able to go out or they didn't have enough information. The lieutenant colonel didn't have a reduced crew. The lieutenant colonel. No, the lieutenant colonel never did. The lieutenant colonel. Well, I guess she wasn't on the boat yet. She's not assigned to the boat. Didn't they operate, didn't they have a problem with the Navy diver? No. I just made that up. No, there's nothing in the record about a Navy diver that had a problem here. In fact, on that ship, there were only about 11 people, including the Navy commander, that requested a religious accommodation. Everyone else was completely vaccinated on a ship of about 300 plus sailors. Well, I was talking about, I guess, before the vaccine. There was a time when operations were impaired because they didn't have a Navy diver. The Navy diver was down with COVID. Is that not right? No, on this ship, Your Honor. That's not the question. The question is whether the military could conclude that it could present a problem. The fact that your client got lucky is, I think, different than the conclusion from the Joint Chiefs of Staff that having people on the sub who are unvaccinated presents a different level of risk. Why is that? Why does your client's view of the medical science override the military's view of the medical science and what it deems necessary to have a force ready to protect this country? Because the record specifically requires individualized assessments to the person, not generalized information or allegations or could-haves or would-haves or possible. If you read the brief, as I know you have, there's a lot of could, would, might. There's nothing definite and there's nothing as it relates to these individuals. In fact, like Doster, there's very little, if any, about their specific job duties in either their opening brief or their reply brief. Well, where would your clients be stationed? On boats, right? Depending on which one you're talking about, if it's the Navy commander, the Navy commander would be in the command of the boat or be on the ship. The lieutenant colonel could be on ship or could be on shore, and in fact, she was never on this ship or on a ship. She was only stationed domestically at different places around the country. But at the time, she could have been deployed to Kuwait. I mean, there have been times when we deployed to Kuwait. She wouldn't be allowed in the country. No, that's not correct. The record evidence shows that we have our own international policy, that we set the policy. We don't get dictated by other countries as to what kind of vaccines are in our service members. That's the United States policy. So if we were going to deploy in support of Kuwait and they said she can't come into the country, the Navy can't take that into account in deciding whether to give her this command? We operate under our policy, and if our policy gives a medical exemption or a religious exemption or doesn't require this vaccine or that vaccine, who makes that decision? Sorry, go ahead. But that is the policy of how we operate when we deploy internationally. The United States can't make that diplomatic decision about whether to put somebody in charge that's going to be told that they can't go into the country? Certainly they could, but they have medical exemptions, as you've mentioned, lots of them, or a number of them. In fact, 10 of the 11 medical exemptions are from vaccinatories to the first mRNA shot, Pfizer and or Moderna. They have medical exemptions. Some of those are permanent. They have administrative exemptions, and those individuals may be non-deployable, for example, overseas, but they're not discharged. So why do they want to discharge this individual here, the Navy commander or the lieutenant colonel? For one reason, for relying upon a religious right under the Religious Freedom Restoration Act. That cannot be the least restrictive means. In fact, the notice that was filed November 16 of the inspector general of the Department of Defense to the Secretary of Defense Austin said that he was informing the Secretary of potential noncompliance with standards for reviewing and documenting the denial of religious accommodation requests of service members, finding that there was a trend in generalized assessments rather than the individualized assessment required by federal law, and that the denial memorandums, just like in this case with both claims we reviewed, generally did not reflect an individualized analysis demonstrating that the senior military official considered the full range of facts and circumstances relevant to the particular religious accommodation request. And in fact, the judge below in the class action preliminary injunction for the United States Marines, which we also filed on November 16, said not for one Marine, not one data clerk or bookkeeper, not one inventory manager, not for one jarhead who served overbroad, put themselves in harm's way, not for a single Marine, no matter how young, strong, gloriously healthy, not even for a Marine that's already contracted COVID-19, not even for those that have engaged in successful COVID protocols, for not one did they have a religious accommodation, not one. He said one searches without success for a wholesome hypothesis that both accounts for these facts. I'm sorry to interrupt, but are states that require vaccinations for school children without religious exemptions violating the Constitution? This is a RFRA claim. I understand, but I have a question. Well, if they have medical exemptions, yes, because under a Smith, if you have individualized exemptions and they provide exemptions for medical but not for religion, they can't do that without addressing the strict scrutiny standard. But RFRA doesn't even require the medical exceptions as the Smith analogy would under the First Amendment. RFRA itself is a stronger, potent medicine than the First Amendment. But RFRA gets you to strict scrutiny. And I think do you agree that the military has a compelling interest in limiting illness from COVID? In general, but not in specific to each individual person, because the compelling interest cannot be generalized. It has to be individualized. So you don't think there's a compelling interest in keeping the commander of a submarine from having COVID? This is not a commander of a submarine. That's not the question. Do you think there's a compelling interest in having the commander of a submarine not get COVID? I would have to analyze that on an individualized assessment. I'm asking individually. Isn't there anything you can say without knowing the facts of that particular commander or that particular scenario? And that's what RFRA requires. In fact, what we have here are rubber stamp, magic words, the policies that are there on the Appendix 964 to 967. Although they use magic words in application, there's a blanket denial across the board. So whether it's a commander of a submarine, a Navy commander of a ship, or a data clerk sitting behind a desk that has no interaction with people, they are across the board saying they have a compelling interest 100 percent. What do you think would be the – going back to Judge Grant's question, what do you think would be the relevant considerations when evaluating if a Naval submarine commander was refusing the vaccine on religious grounds? What would be a legitimate inquiry? Two different areas. Number one, what kind of job does this person have? How long are they going to be deployed or potentially be deployed underwater? Are they not going to be coming up for resurfacing because of other kinds of issues? Are they going to be surfaced where they could be dropped off on shore? Different kinds of facts with regards to that. Does any of that make a difference if you're already on a submarine and you have COVID? You still have arguments about the second prong, but I can't understand how you can argue that there's no compelling interest in having a person who's on a submarine in close quarters with other military personnel not have COVID. I can't understand that. Well, I'm talking about a compelling interest that's to the person. I'm asking about a person who's on a submarine. You can't concede that it's in the military's interest for a person who's on a submarine not to have COVID? Under the circumstances that I just responded to in terms of what they are doing, if that is just going out, they don't always go underwater and they don't always stay underwater for a long time and they don't always go on deployments. Are you challenging whether it's the least restrictive means but conceding that it's a compelling government interest? No, I'm not saying that it's a compelling governmental interest. I'm saying that in order to analyze whether it's a compelling governmental interest, it has to be to that person. But more specifically— I'm giving you a hypothetical that I'm asking you to answer. There is an individual who will be on a submarine underwater for, let's say, a week. Does the military have a compelling interest in that person not having COVID? That would depend upon whether that individual has COVID-19 immunity. As we know, you can get COVID a second time. The question is not whether they have a compelling interest in having the vaccine. It's whether they have a compelling interest in having the person not get COVID. Well, even if they do have a compelling interest, the question then goes to the least restrictive means. I understand, but I need you to answer my question, please. I can't answer that other than to say—I would give you that as a hypothetical, but I would say that least restrictive means then, even if compelling interest for that particular individual, even if you have that, and I'll give you that for this hypothetical, least restrictive means is not discharge. Least restrictive means cannot be permanently discharging the commander of that submarine who's highly trained, who can be temporarily reassigned to something else. But this case is not about whether they can be discharged. It's whether their assignment can be affected by the absence of a vaccine. That's what the preliminary injunction precludes. No, this is about discharge. They were five days away from being put on the ODN and processed for discharge. But in fact— But it's partly about whether they can be assigned in a different way because they're not vaccinated. Is that not correct? No, Your Honor. Your Honor, this injunction has two points, and I'll address the issue that you asked earlier about, mootness. No vaccination pending the litigation and no retaliation because they have access to their rights under RFRA. Now, even if the NAA— You don't think the preliminary injunction precludes the Navy from changing an assignment so that the plaintiff is not assigned to a place where the COVID risk is greater? No, in fact, it does allow that. In fact, in our notice of filing March 28, 2022, the judge indicated that his order is two points, no vaccination, no retaliation because you've accessed a religious accommodation request. Then he says— And they could ask, if they had a question, they could come ask the district judge, is it okay for us to reassign this person? No, they reassign them for non-retaliatory reasons. They can—in fact, he says that it says nothing regarding deployment, nothing regarding their moving them around. The injunction remains indifferent to non-retaliatory exercise of command authority. Indeed, they've already reassigned Lieutenant Colonel Tu and the Navy commander. There's a stay in effect. But they reassigned him because they are saying they're not doing that because of retaliatory purposes. They already removed the Navy commander from the ship and reassigned him. As long as they do a non-retaliatory decision, not punishing them because they have accessed the religious accommodation request under the Religious Freedom Restoration Act, that's fine, and they're able to do that. They're able to deploy them anywhere. I did want to ask you this. The Navy commander thinks the mRNA vaccine messes with DNA, an assertion that's plainly not so. Do you claim that that's a religious belief that can't be taken into account, or can the Navy take into account that here is a person who believes something that plainly is not so? Well, Your Honor, with all due respect, I don't think it is in the providence of the court to judge the validity of their religious beliefs. Is that a religious belief that mRNA messes with DNA? Do you say that's a religious belief? He testified clearly about the aborted fetal cell. That was his primary issue. Yeah, my question wasn't about that. My question was whether believing that the mRNA vaccine messes with DNA is a religious belief. If it's his religious belief and that's sincere, then that's a religious belief that the court has. Yeah, the question, if you don't want to answer, just don't answer. But I'm not going to judge his religious belief, and I don't think the court will either. Yes, I'm not going to judge his religious belief either. My question was, is it your position that that is a religious belief? That's a yes or no. It's either a religious belief. That is one of his religious beliefs, that putting something that would be harmful or potentially harmful.  My question is whether this specific thing he said, that mRNA vaccines mess with your DNA, all I want to know is, is it your position that that is a religious belief? It is his religious belief. All right, that was my question. Thank you. Before you sit down, you had mentioned mootness. Are you in agreement that if the language in the House Defense Authorization Act passes, this case is moot? I think you're about to suggest you don't agree. I don't agree with that, number one. Obviously, that's speculative, but even if it passes, it only addresses one prong of the injunction, no vaccination. The second prong of the injunction is no retaliation, and that has happened in the past. In fact, on page 30 of their brief, their opening brief, they say, by merely requesting an exemption, that that itself is insubordination, that that itself undermines good order and discipline. They retaliate against those that are sworn to defend the Constitution and the laws of the country when they access their rights under the laws of the country. And so that retaliation, if the vaccine mandate were to go today, part of the injunction, no vaccine would be an issue not on the table, but the retaliation still remains. Doesn't the record reflect that Navy Commander One defied other COVID-related guidelines? Do I have a moment to answer that? Yes. There was a statement that was filed at the end of three days of eight-hour hearings after the record had closed.  And then they wanted to introduce this document. In that document, they said that in the fall of 2021, he had a sniffle. And the Commodore told him to go test. He did test, and he found out he had COVID, and he then did the quarantine. He had a minimal COVID response. My understanding is that the record reflects that he denied Navy protocol requiring prompt testing and consequently exposed his crew to COVID for two days, including during a close-quarters brief with his CO and his entire navigation team, and that then he lied to his superior by claiming he was going to visit his local family and instead flying out of the area to take part in this lawsuit, which would have required an additional quarantine period of five days. Do you disagree with those facts on the record? No, because that's not what the judge found. And he heard these live testimony. He heard them more than once. He heard the Navy commander twice on two of the three eight-hour hearing days. He found them credible, and he did not accept that. And, in fact, that's just coming from their opening brief. That is a misconstruction of what the actual facts are. And, in fact, he took a leave, and that leave was to come down to testify in Tampa at the federal court. That's where he went, and he provided that to his commodore and to also his other person. That was the number two person. What happened ultimately is that the commodore, because of the religious accommodation request, turned that into another alternative reason to try to say, well, there's other reasons why we want to address him and discipline him. But that's not supported by this judge who saw these individuals testify in open court. I wanted to ask one more question about the mootness. And you say, well, it's not moot because of the fear of retaliation. Back in my day job at the district court, I presided over lots and lots of employment cases. I suspect every plaintiff in every one of those has a concern about retaliation. Those who have already been fired may be concerned about the next case, but those who still work there, and a lot of them do, always are concerned about retaliation. I don't enter preliminary injunctions. In fact, I don't enter an injunction at all. The law already precludes retaliation. What makes this case any different from all of those where we don't keep the case to deal with retaliation? There's a law against it that's already taken care of. A couple of reasons, Judge Hinkle. Number one, there's already been retaliation. There's retaliation as we speak. By simply removing that mandate does not remedy the issue of retaliation. As I mentioned on page 30 of their opening brief, by merely requesting a religious accommodation, they believe that that is insubordination. In other words, just by requesting your rights under RFRA and the religious accommodation process, that they believe that that is impermissible. You can never request your rights under this. And by the way, the policy that's at challenge here is not just the COVID-19. It's the underlying policy. It's the process that we have here that violates RFRA. And that applies to all immunizations. COVID-19 is just one of them. This is how they operate. They now, in six words, finally after three days of eight-hour plus hearings, acknowledge in six words that RFRA applies. But their understanding of how it should apply is fundamentally different than the statute. You're getting away from his question. I'd ask you to wrap up your response to the retaliation, please. And I would say that how—well, I was trying to weave that together because they do not believe that RFRA has anything to say to how they're going to treat their service members. They've done that in the past. They're doing it now. They'll do it in the future. But beyond that, Your Honor, the policy itself is also at issue. And by repealing a mandate, the policy is still in effect. And that policy clearly violates RFRA, as the Fifth Circuit and Sixth Circuit and many other courts have found. What policy are you referring to? The religious accommodation policy that does generalizations and nothing specific to the person with respect to compelling interest or least restrictive means. And that's what the inspector general of the DOD found as well when he notified Secretary Austin earlier this year that their policy was a generalized application without individualized exemptions and that there was a violation of federal law with this policy. Now, it's manifested in how that operates with COVID, but that policy applies to all immunizations, all immunizations before and after COVID, and that policy is still in effect. Can I ask one other question? I forgot earlier. I want to ask this question. I understand that there is some private medical information with respect to Lieutenant Colonel Two.  I can't figure out how in the world Navy commander gets to proceed anonymously with a pseudonym. And I know that hasn't been briefed and brought up here, but it seems to me that's a question for the court. It's a public court system. We ordinarily wouldn't let somebody like this proceed without disclosing their identity publicly. And so my question is, isn't that a question that we should take up even though it hasn't been brought up specifically on appeal? And if we decide that this is not a case that can proceed in federal court under a pseudonym, would your client's choice be to abandon the claim or to disclose his name publicly as part of the case? Your Honor, for some of those individuals, it would be to abandon the claim because of the repercussions. These two are all we're talking about. These two would abandon the claim? They likely could abandon the claim. And, in fact, that was an issue that was argued and briefed below and the judge found. I read the opinion. I just wanted to know whether you would abandon if we decided, and I'm just one, but if we decided you cannot bring this case anonymously, you're telling me you give up the claim, and I guess that would make it moot. I can tell you for a fact without contacting them, I can tell you that there is a fear. This particular case was filed on behalf of multiple members of the military, and these were two injunctions that came up first because of the five-day notice. So they are in the same category as others. I get it, but, again, I do scores of employment cases, and every plaintiff in every one of those cases is worried about it. If Brown and Brown v. Board of Education can proceed under his own name, the parent and the child's name, and Obergefell can proceed under Obergefell, and Korematsu can proceed under Korematsu, I'm not sure how a Navy commander, and, you know, it's a religious claim, and he says he's Christian. Jesus said don't hide your lamp under a barrel, under a bushel. So that was my question, but I guess the answer is you can't tell me whether he'll abandon the claim or go forward. I can't tell you as I stand here without talking to him specifically about that again. I can tell you from past conversations the fear that they have had, and, for example, these are medical documentations or information. You know, for the lieutenant colonel, she had the other issue, but for the Navy commander or anyone else, it's medical, and they have a right to not have that broadcast to everybody. For example, if you— But every Social Security case has medical information, and the plaintiff always proceeds in the plaintiff's own name. I get scores of cases with medical information, but we may have talked about it as much as we need. What I read last year is there is an attempted— it's not in this record, but it was discussed below, and that is there is, and it is part of testimony before Judge Merriday, that there is a thing called blacklisting in the military. Blacklisting is typically used for someone who might be a bad actor, a domestic abuser, and so you blacklist them. You don't want to be around that individual because that would interfere with your promotion, and so you shun that individual. That same kind of thing the military testified to, various individuals testified to, that that's, in fact, what happens when somebody finds out that you are not vaccinated with COVID-19 is a blacklisting from higher up and a shunning that ultimately interferes with your ability to just communicate, operate, and in fact would ultimately prohibit your advancement. In other words, it puts them in the same category as a person who is a domestic abuser. That's why they don't want their names to be broadcast to everyone in their command or in their platoon or in the military. I think we understand your point, so thank you. Thank you. Ms. Clark, you have three minutes. Thank you. I'll just make a few brief points. I wanted to start with the scope of the preliminary injunction. Obviously, that injunction has been stayed insofar as it affects these deployment, assignment, and other operational decisions, and we would obviously submit that at the very least this court should reflect that and vacate that portion of the injunction. I think the opposing counsel was discussing some of the back and forth with the district court during the stay proceedings as to exactly what his injunction prohibited, but I think it's clear from his rulings that he considered it to prohibit reassignment of these plaintiffs. I think opposing counsel walks away from that as not really pressing so much the deployment idea and just says, well, at least they can't discharge them. And we've obviously addressed in our brief why they still need to be able to continue on with discharge as well. Can you respond to opposing counsel's argument that this might not be moot if the defense authorization bill passes and is signed by the president? So, again, obviously we'll have to wait and see what exactly happens. Let's just assuming for the sake of argument that the language that's in the House bill is actually enacted. Right. So in that case, it would direct the secretary of defense to rescind the requirement. And at that point, obviously this preliminary injunction is arising from plaintiffs' denial of a religious exemption to the COVID-19 vaccination requirement. So if there's no COVID-19 vaccination requirement to have an exemption from, I'm not sure what's left. I think plaintiffs sort of try to shift gears into more of a policy-based attack, suggesting that the entire religious accommodation process or policy is somehow violating RFRA. But they're also suggesting that the religious exemptions have been filed. And so even though there might not be a COVID mandate next week, that they, because these religious exemptions have been filed, that they face retaliation. Right. And I don't think that's right. I don't think there's anything in the record to support that. Obviously, if they believed later that they were subject to retaliation, I suppose they could pursue that. But that's, I think, quite far outside the scope of this preliminary injunction appeal. I'll just briefly note page 30 of our brief that opposing counsel is discussing. What it says is that if a commanding officer refuses the vaccination, refuses to comply with the vaccination requirement, that undermines their authority. But that obviously, you know, that includes them having sort of gone through any exemption request. So it's if they've exhausted all of their avenues and are now required to be vaccinated. May I briefly finish? Please. That if they then continue to refuse, that that could have an effect on their authority as to the service members under their command. So it's certainly not the case that the exemption request is in subordination or otherwise undermines their authority. If there are no further questions, then we ask that this court vacate the preliminary. Thank you. Thank you both. And we have your case under advisement. Our next case is 84 Partners.